UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| | ) No. 4:06CV01427 FRB ) |
| v. | ) ) |
| EDWARD LOEHR, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

Presently before the Court is the motion of plaintiff State Auto Property and Casualty Insurance Company, ("plaintiff" or "State Auto") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 7-4.01. (Docket No. 52/filed January 10, 2008.) This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I. Background**

Viewed in the light most favorable to defendant Edward Loehr, the record establishes the following facts and inferences. State Auto, a foreign corporation organized and existing under the laws of Ohio and authorized to do business in Missouri, issued to Edward Loehr (also "Loehr" and "defendant"), a Missouri resident, a Homeowner's Insurance Policy, Number HDP 4283213 ("policy"),

providing coverage for Loehr's Wildwood, Missouri home. The policy included coverage for, <u>inter</u> <u>alia</u>, dwelling, other structures, personal property, and loss of use. Regarding Loehr's dwelling and personal property, the policy provided for payments for the "Actual Cash Value" ("ACV"), and for the "Replacement Cost Value" ("RCV"). The amounts payable for RCV were greater than the amounts payable for ACV. The policy period ran from December 21, 2003 through December 21, 2004.

On July 24, 2004, Loehr's home and its contents were severely damaged by fire. In accordance with the policy, Loehr notified State Auto of his loss, properly submitted claims for his losses related to the dwelling, personal property, and loss of use, and received some payments from State Auto. However, the parties had a continuing disagreement regarding the dollar values of Loehr's losses, and were therefore subject to an appraisal process that would require both parties to incur additional expenses. Loehr then retained attorney Scott Buehler to represent him.

Following his retention, Buehler negotiated on Loehr's behalf with representatives from State Auto. On December 15, 2005, Buehler wrote a letter to Mr. Marc Lovrak, a claims examiner for State Auto, confirming that State Auto had agreed to give Loehr an extension of time to name an appraiser. (Docket No. 52-6.) Buehler further indicated that, in light of an earlier conversation he had with a State Auto representative, he anticipated receipt of a settlement offer from State Auto. (<u>Id.</u>)

The record also includes a December 29, 2005 letter from Lovrak to Buehler, in which Lovrak confirmed receiving Buehler's December 28, 2005 voice mail, agreed to give Loehr another extension of time to name an appraiser, and indicated that he believed that the claim could be resolved without the appraisal process. (Docket No. 52-7.)

On January 5, 2006, Buehler wrote a letter to Lovrak, with a copy to Mr. Robert W. Cockerham, counsel for State Auto.[1] (Docket No. 52-8.) In the January 5 letter, Buehler "listed the settlement figures that my client and State Auto Insurance Companies ("State Auto") have agreed to concerning the Dwelling Coverage, Personal Property and Loss of Use." (Id. at 1.) Buehler wrote that the parties had agreed that Loehr's dwelling had a RCV of $373,539.25, and an ACV of $272,613.33; and that his personal property had a RCV of $168,623.15, and an ACV of $108,832.76.[2] (Id. at 1-2.) Buehler further wrote that, because Loehr had already received a check for $264,221.09 towards the ACV of his dwelling, he would be entitled to an additional $8,392.24 for dwelling ACV. (Id. at 1.) Buehler also wrote that Loehr would be entitled to a check in the amount of $108,832.76 representing the ACV of his personal property. (Docket No. 52-8 at 2.) The letter

---

[1] The record indicates that Mr. Cockerham is an attorney with the law firm of Brown & James, P.C., in St. Louis, Missouri.

[2] Regarding the dwelling, the difference between the RCV of $373,539.25 and the ACV of $272,613.33 is $100,925.92. Regarding the personal property, the difference between the RCV of $168,623.15 and the ACV of $108,832.76 is $59,790.39.

further specified that Loehr had already received $61,000.00 for his Loss of Use claim and was entitled to an additional $2,000.00. Buehler then wrote as follows: "Mr. Loehr has agreed to waive any additional claims that he had or may have that are in excess of the above stated $373,539.23 for Dwelling Coverage, $168,623.15 for Personal Property and $61,000.00 for Loss of Use." (Id.) Buehler requested confirmation from State Auto that, in light of the fact that Loehr and State Auto had reached an agreement concerning the amount of loss on all items, that Loehr would not be required to name an appraiser by the next day. (Id.)

Buehler's January 5, 2006 letter further specified that Loehr would be free to file a subsequent RCV claim "so long as there is sufficient proof of said expenditures." (Id.) Buehler wrote that he understood that Cockerham would draft "some type of settlement agreement" reflecting "the arrangements discussed herein". (Docket No. 52-8 at 2.)

In his Response to State Auto's Statement of Undisputed Facts, Loehr admitted that Buehler had his authority to bind him to the terms of the January 5 letter, and admitted that he was aware that Buehler was "trying to put together some type of a document that would reflect payment of the sums referenced in Scott Buehler's letter of January 5, 2006." (Docket No. 59-2 at 14.)

On January 18, 2006, Cockerham wrote to Buehler, confirming an earlier conversation with Buehler and confirming that Loehr would make his home available for inspection on January 19,

-4-

2006. (Docket No. 52-9.) Cockerham further indicated that he was enclosing two documents: a "Full and Complete Release of All Claims, Policy Release and Confidentiality Agreement" ("Release"), and a Subrogation Agreement (collectively "settlement documents"). (Docket Nos. 52-10, 52-11.) The settlement documents specified the agreed-upon dollar amounts of the ACV and RCV of Loehr's dwelling and personal property as set forth in Buehler's January 5, 2006 letter, and it was provided that a total of $119,225.00 was immediately payable to Loehr. (Id.) The Release further provided that Loehr would be entitled to receive the agreed-upon RCV of both his dwelling and his personal property, so long as he provided State Auto with proof that he had made expenditures towards the repair/replacement of such property by January 1, 2007. (Docket No. 52-10.) The Release also provided that any claims for RCV not supported by proof of expenditures by that date would not be reimbursed. (Id.) The relevant paragraphs read as follows:

> It is understood, acknowledged and agreed that the undersigned, Edward Loehr, may make a replacement cost claim, for the dwelling, for the difference between the Replacement Cost Value ("RCV") and the Actual Cost Value ("ACV") not to exceed $100,925.90, so long as sufficient, documented proof that Edward Loehr made expenditures for the repair or replacement of the dwelling at 18016 Panorama Drive in Wildwood, Missouri is provided to State Auto on or before January 1, 2007. It is further understood, acknowledged and agreed that any expenditures not submitted by Edward Loehr on or before January 1, 2007 shall not be covered by this agreement or the policy and will not be reimbursed by State Auto.
>
> It is understood, acknowledged and agreed that the undersigned, Edward Loehr, may make a replacement cost claim for personal property for the difference between

> the Replacement Cost Value ("RCV") and the Actual Cost Value ("ACV") not to exceed $59,790.39, so long as sufficient, documented proof that Edward Loehr made expenditures for the replacement of personal property at 18016 Panorama Drive in Wildwood, Missouri is provided to State Auto on or before January 1, 2007. It is further understood, acknowledged and agreed that any expenditures not submitted by Edward Loehr on or before January 1, 2007 shall not be covered by this agreement or the policy and will not be reimbursed by State Auto.

(Id. at 1.)

The Subrogation Agreement also provided that Loehr was entitled to make a RCV claim for his dwelling and for his personal property, provided that "sufficient, documented proof that Edward Loehr made expenditures for the repair or replacement of the dwelling and/or personal property is received by State Auto on or before January 1, 2007." (Docket No. 52-11.)

On the copy of the Subrogation Agreement filed with State Auto's motion for summary judgment, handwritten notes are visible in which, inter alia, the "January 1, 2007" date is crossed out, and "July 31, 2007" is written in. See (Id.) During his deposition, Buehler was questioned about these handwritten notes, and he identified the handwriting as his own. (Deposition of Scott Buehler, Docket No. 52-5, at 17.) In a January 25, 2006 email directed to Mr. Michael Cerulo,[3] another attorney representing State Auto, Buehler wrote, inter alia, "Mr. Loehr would like to have 18 months to file his supplemental claims for RCV. The period

---

[3]The record indicates that Mr. Cerulo is also an attorney with the law firm of Brown & James, P.C., in St. Louis, Missouri.

in your version is 11 and 1/4 months." (Docket No. 52-12 at 1.) Via numbered paragraphs, Buehler listed five proposed changes to the Release, and two proposed changes to the Subrogation Agreement. (Id. at 1-2.) Buehler also wrote that he had made changes to the settlement documents, and that he was enclosing the originals plus "red line" versions showing "the changes that my client is proposing." (Id.)

In Buehler's amended version of the Release, the paragraphs regarding Loehr's right to file RCV claims indicated that Loehr had until July 31, 2007 to provide proof of such expenditures, and that any expenditures not submitted before this date would not be covered by the policy, and would not be reimbursed by State Auto. (Docket No. 52-13.) Buehler's red-lined version of the Subrogation Agreement indicated that Loehr would have the right to make RCV claims pursuant to the Release. (Docket No. 52-14.)

The record reflects that Buehler and attorneys for State Auto continued to communicate and send versions of the settlement documents back and forth until February 13, 2006. On February 2, 2006, Cockerham forwarded copies of the settlement documents to Buehler, and both the Release and the Subrogation Agreement specified the July 31, 2007 date as the deadline for Loehr to submit proof of expenditures in order to receive payments for RCV. (Docket Nos. 52-18 and 52-19.) All subsequent versions of both settlement documents specified the July 31, 2007 date as the

deadline for Loehr to submit proof of expenditures in order to make RCV claims. The settlement documents were not signed by Loehr, or by any attorney. Loehr subsequently fired Buehler.

Loehr admits that State Auto subsequently paid him via separate checks in the following amounts: $108,832.76, $8,392.24, and $2,150.00. (Docket No. 59-2 at 9; 16-17.) Loehr further admits that, as of July 31, 2007, he had not provided State Auto with any proof of expenditures made toward repairing or replacing his dwelling or personal property. (Docket No. 59-2 at 8; Docket No. 53 at 16.)

In his Response to State Auto's Statement of Undisputed Facts, Loehr stated that he agreed to the amounts State Auto offered because "he was frustrated by the length of time it was taking to resolve the claim, the expense he had incurred in submitting the claim and trying to satisfy State Auto's requests for information and documentation, and the significant additional expense he would incur if the claim continued through the formal appraisal process." (Docket No. 59-2 at 13.)

On September 28, 2006, State Auto filed the instant action, seeking a declaratory judgment that it had paid Loehr's ACV claim in full; that Loehr was entitled to receive RCV payments not to exceed $100,925.90 for his dwelling, and $59,790.30 for his personal property; and that he was only entitled to receive these

amounts upon submission of proof of expenditures by July 31, 2007.[4] On May 1, 2007, Loehr filed his Second Amended Answer, Affirmative Defenses and Counterclaims, claiming that he had never agreed to the terms outlined in the settlement documents, and further alleging breach of contract, and vexatious refusal to pay under Rev. Stat. Mo. § 375.420.

State Auto filed the instant motion for summary judgment on January 10, 2008. (Docket No. 52.) Therein, State Auto argues that, because Loehr failed to provide any proof of expenditures towards repairing or replacing his dwelling or personal property before July 31, 2007, he is not entitled to receive payment in excess of what State Auto has already paid. In response, Loehr contends that Buehler had no actual or apparent authority to act on his behalf beyond the terms set forth in the January 5, 2006 letter, and that his affidavit is sufficient to rebut any presumption of such authority. Loehr also contends that there was no agreement to settle beyond the January 5, 2006 letter because the settlement documents contained additional material terms with no additional consideration. Finally, Loehr argues that the term of the settlement documents providing that Loehr had until July 31, 2007 to provide documentation of expenditures places the documents within the statute of frauds, and they are therefore invalid because they are not signed.

---

[4]The Complaint was filed before July 31, 2007, the deadline specified in the settlement documents.

## II. Legal Analysis

Because this matter is before this Court pursuant to diversity jurisdiction, this Court must apply Missouri's substantive law, and federal procedural law. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (federal court sitting in diversity must apply the forum state's substantive law, and federal procedural law); see also Winthrop Resources Corp. v. Stanley Works, 259 F.3d 901, 904 (8th Cir. 2001).

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before it shows that there are no material issues of fact in dispute, and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. To rebut the motion, the nonmoving party must do more than rely on allegations or denials in the pleadings; he must advance specific facts, supported by affidavits or other admissible evidence, that raise a genuine issue for trial. Skare v.

Extendicare Health Services, Inc., 515 F.3d 836, 840 (8th Cir. 2008) (citing Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 629 (8th Cir. 2005)); see also Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 812 (8th Cir. 2008). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original.)

    A.    Buehler's Settlement Authority

The undersigned will first address the threshold issue of whether Buehler possessed the authority to enter into a settlement agreement with State Auto. In Glass v. Kirkland, 29 F.3d 1266, 1269 (8th Cir. 1994), the Eighth Circuit recognized that, under Missouri law, although an attorney's authority to settle a client's case does not arise by the mere fact of his employment, "an attorney is presumed to have the authority to settle a case if the attorney expressly states that he has such authority or negotiates as though he does." Id. at 1269 (citing Barton v. Snellson, 735 S.W.2d 160, 163 (Mo. Ct. App. 1987) and Leffler v. Bi-State Dev. Agency, 612 S.W.2d 835, 837 (Mo. Ct. App. 1981) ("Where it is shown that a party's attorney of record 'represented ... he had such authority [from the client] and ... did reach an agreement with [the other party's] counsel to settle....', then 'it was incumbent upon [the party] to prove to the trial court that [his] attorney

lacked authority to settle the case, since his act of settling ... is presumed prima facie to be authorized."))

Loehr submits his affidavit, in which he states that Buehler had no authority to act on his behalf beyond the terms set forth in the January 5, 2006 letter, and argues that his affidavit is sufficient to rebut any presumption of settlement authority. However, a party opposing a motion for summary judgment "may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [his] favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005) (citing Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995)). A properly supported motion for summary judgment is not defeated by self-serving affidavits. Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson, 422 F.3d at 638).

The compromise of a pending suit by an attorney having apparent authority will be binding upon his client, unless it be so unfair as to put the other party upon inquiry as to the authority, or imply fraud. Promotional Consultants, Inc. v. Logsdon, 25 S.W.3d 501, 505 (Mo. Ct. App. 2000) (citing Wenneker v. Frager, 448 S.W.2d 932, 937 (Mo. Ct. App. 1969)).

Here, as in Glass, there is no evidence that Buehler expressly represented to opposing counsel that he had Loehr's express authority to resolve each issue on Loehr's behalf. However, as in Glass, there is ample indication in the record that

Buehler's conduct during settlement talks led State Auto's attorneys to believe that Buehler was authorized to settle the dispute on Loehr's behalf, including waiving rights to future claims except as provided in the settlement documents, and binding Loehr to the July 31, 2007 deadline. It cannot be said that Buehler's conduct put State Auto's attorneys on inquiry as to his authority, nor can it be said that the settlement was procured by fraud. See Logsdon, 25 S.W.3d at 505 (citing Wenneker, 448 S.W.2d at 937.)

Loehr retained Buehler for the specific purpose of resolving his insurance claim with State Auto. Buehler never indicated to State Auto's attorneys that he lacked Loehr's authority to settle the dispute, or any part of the dispute. On the contrary, the record shows that Buehler had many communications with State Auto's attorneys and other representatives in which he actively sought to settle the dispute. The record reflects letters and email communications between Buehler and State Auto attorneys and claims examiners, many of which included confirmations of telephone conversations. It is also clear that Buehler and State Auto attorneys repeatedly sent revised versions of the settlement documents back and forth. In his January 5 letter, the terms of which Loehr admits Buehler had his authority to bind him to, Buehler indicated that Loehr agreed to waive additional claims in excess of the agreed-upon RCV amounts, and further indicated that Loehr could not submit RCV claims absent "sufficient proof of said

expenditures." Furthermore, in his January 25 email to State Auto attorneys, Buehler indicated "Mr. Loehr would like to have 18 months to file his supplemental claims for RCV." Buehler revised the settlement documents, indicating that he was doing so to reflect the changes his client was proposing, and indeed, the revised settlement documents reflected the July 31, 2007 date. State Auto agreed to this extended deadline. The parties continued to communicate and exchange revised versions of the settlement documents, and Loehr admits that State Auto ultimately paid him via three separate checks, the amounts of which are consistent with the amounts the parties agreed to regarding the ACV of Loehr's dwelling and his personal property, and his loss of use claim. Buehler obviously negotiated as though he had settlement authority, and his authority is therefore presumed.

The evidence Loehr submits is insufficient to rebut the presumption of Buehler's authority. The record contains no credible evidence tending to show that Loehr intended Buehler to have the authority to bind him to certain terms but not to others. Loehr admits that Buehler had the authority to bind him to the terms of the January 5 letter, which specified that Loehr waived all future claims in excess of the amounts stated in that letter, and further provided that RCV claims would have to be supported by sufficient documentation of expenditures. The settlement documents do not contain terms beyond the scope of those contemplated in the January 5 letter, with the exception that a deadline is specified.

Regarding the deadline, it is apparent that, following the January 5 letter, there was some communication between Buehler and Loehr regarding an acceptable deadline for providing proof of expenditures to support future RCV claims, inasmuch as Buehler subsequently wrote to State Auto attorneys, "Mr. Loehr would like to have 18 months to file his supplemental claims for RCV." The record establishes that Buehler revised the settlement documents accordingly, and that State Auto attorneys agreed to extend the deadline to July 31, 2007. All subsequent versions of the settlement documents specified the July 31 date, including the final set of settlement documents the parties exchanged. The record contains no evidence tending to show Loehr's intent that Buehler have authority to bind him to an agreement on the ACV and RCV figures, but not have authority to bind him to other conditions of settlement. Finally, nothing in the record indicates that the settlement was procured by fraud. Because Loehr cannot overcome the presumption that Buehler had authority to negotiate and enter into settlement on his behalf, there exists no reason for this Court to invalidate the instant settlement agreement.

    B.   <u>The Settlement Agreement</u>

Having found that Buehler possessed settlement authority, the undersigned addresses the scope of the settlement agreement. In Missouri, the scope of a settlement is determined by the intent of the parties, which is ascertained from the language used and from the circumstances surrounding the settlement. <u>Schroeder v.</u>

Dy-Tronix, Inc., 723 S.W.3d 934, 936 (Mo. Ct. App. 1987). Where the language of the settlement is plain and unambiguous on its face, the intent of the parties is to be ascertained from the agreement. Andes v. Albano, 853 S.W.2d 936, 941 (Mo. Ct. App. 1998).

Here, the plain and unambiguous language of the settlement documents expressed the intent of the parties that Loehr would immediately receive the aforementioned agreed-upon dollar amounts for the ACV of his dwelling and his personal property, and for loss of use, and that he would further be able to submit RCV claims up to the aforementioned amounts after submitting proof of expenditures by July 31, 2007. The dollar amounts provided for in the settlement documents are the same as those amounts expressed in Buehler's January 5 letter, which Loehr admits he agreed to, and the January 5 letter also clearly provided that RCV claims would have to be supported by documentation of expenditures. Finally, it is apparent from the record that, following the January 5 letter, Loehr indicated to Buehler that he wanted additional time to provide evidence of expenditures; Buehler communicated Loehr's wishes to State Auto's attorneys and revised the settlement documents accordingly; and State Auto agreed to the extended deadline, which was reflected in all subsequent versions of the settlement documents. Therefore, the undersigned concludes that the agreement between the parties was that State Auto would immediately pay the aforementioned ACV and Loss of Use amounts;

that State Auto would not be obligated to pay RCV claims in excess of the aforementioned RCV dollar values; and State Auto would not be obligated to pay any RCV claims absent proof of expenditures submitted by Loehr on or before July 31, 2007.

   C.   The Statute of Frauds

Loehr next contends that, even if an otherwise valid contract was formed, it cannot be enforced against him because it falls within Missouri's statute of frauds.  Loehr argues that the term of the Release providing that he had until July 31, 2007, more than one year after the making of the agreement, to provide documentation of expenditures to State Auto puts the Release within the statute of frauds and, because it lacks his signature, it fails to satisfy the statute's requirements.  Loehr's argument is not well taken.

The relevant section of Missouri's statute of frauds provides that "[n]o action shall be brought . . . upon any agreement that is not to be performed within one year from the making thereof" unless it is in writing and signed by the party against whom enforcement is sought. Mo. Rev. Stat. § 432.010. As the Eighth Circuit has observed, Missouri follows the "familiar rule" that any contract that can hypothetically be performed within a year is outside of the statute of frauds, "no matter how fanciful the possibility of performance may be." Visiting Nurse Association, St. Louis v. VNA Healthcare Inc., 347 F.3d 1052, 1055 (8th Cir. 2003) (citing Crabb v. Mid-American Dairymen, Inc., 735

S.W.2d 714, 715-16 (Mo. 1987)). Here, while the Release certainly specified that Loehr had until July 31, 2007 to provide the necessary documentation to State Auto, nothing in the Release precluded him from providing documentation of expenditures on an earlier date, within one year of the making of the agreement, after which time State Auto could have paid Loehr's additional claims. July 31, 2007 was simply the latest date on which Loehr's documentation could be submitted. As the Eighth Circuit has held, because this Court can imagine Loehr's and State Auto's performance of the contract within one year, it cannot be said that the contract is within the statute of frauds. <u>Visiting Nurse Association</u>, 347 F.3d at 1055.

Finally, Loehr attempts to create a factual dispute surrounding which set of settlement documents State Auto is seeking to enforce. The agreement between the parties that State Auto seeks to enforce is that State Auto pay an agreed-upon amount for ACV and loss of use, which it has done, but will not pay the additional agreed-upon amounts for RCV unless Loehr submits proof of expenditures by July 31, 2007. The dollar values of ACV and RCV have remained unchanged since Buehler's January 5 letter. The language concerning the July 31, 2007 date has remained unchanged since Buehler revised the settlement documents to suit Loehr's wishes and forwarded them to State Auto attorneys on January 25, 2006. Loehr's attempt to create a factual dispute fails.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that State Auto's Motion for Summary Judgment (Docket No. 52/filed January 10, 2008) is **GRANTED** in its entirety. Judgment shall be entered accordingly.

*Frederick R. Buckles*
_____
UNITED STATES MAGISTRATE JUDGE


Dated this 26th day of September, 2008.